3.18mj14
3:18mj 15
3) 18mj 16

**ATTACHMENT C**
**AFFIDAVIT**

I, Lindsey Bosso, being first duly sworn, hereby depose and state as follows:

1.     I am a Special Agent with the Department of Homeland Security (hereinafter "DHS"), Immigration and Customs Enforcement, Homeland Security Investigations (hereinafter "HSI"), assigned to the Resident Agent in Charge, Pensacola, Florida.  I have been so employed since June 2003.  As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A.  During my tenure as a special agent, I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in Title 18, United States Code, Section 2256) in multiple forms of media, including computer media.  I have participated in the execution of numerous search warrants, dozens of which involved child exploitation and/or child pornography offenses.  This affidavit outlines the basis for a violations of Title 18, United States Code, Sections 2422(b), the attempted enticement of a minor, and 2252A, possession of child pornography.

2.     I present this affidavit in support of applications for search warrants to seize and to search relevant evidence contained on the following three (3) electronic devices more specifically described as:  an **IPAD (bearing serial number: DMPRX76FGXPX)** described in Attachment A-1; a **white Samsung cellular telephone in a black cellular**

1

telephone case described in Attachment A-2; and a **Samsung laptop computer (bearing serial number: Z02Y93FZ402758K)** described in Attachment A-3.

3.      Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I seek authority to search the above devices for evidence, fruits and instruments related to the unlawful activities described in this affidavit.  The activities are believed to be in violation of federal law, which includes, but is not limited to, violations of Title 18, United States Code, Sections 2422(b), the attempted enticement of a minor, and 2252A, possession of child pornography.

4.      I have not included each and every fact I know about the target of this investigation or the conduct described herein.   Rather, I have included only those facts I believe are needed to demonstrate probable cause for the warrants sought.   The information in this affidavit is based on my personal knowledge and observations, on information conveyed to me by other law enforcement officials, and based upon my review of records, documents and other physical evidence related to the activities described herein.

## THE INVESTIGATION

5.      Beginning in or about March 2018, Investigator Mike Evans with the Okaloosa County Sheriff's Office (hereinafter "OCSO"), acting in an undercover capacity, began chatting online on the website "www.kidschat.net," in order to identify any individuals interested in exploiting or harming children.   According to their publicly accessible website, Kidschat.net professes to be the "world's largest chat for kids."  Kidschat.net allows its users to register for an account before chatting, or an

2

option exists to utilize the website as a "Guest" instead.  All users must click on the "I

accept" button, regarding the chat room rules before being permitted to chat on their

social platform.  A sampling of the chat room rules are as follows:

-You will agree to be 13 or over (not older than 19) before entering the kids chat rooms;
-You will not post obscene or vulgar messages;
-You will choose an appropriate and clean nickname;
-You have finished all your homework and have some free time now; and
-You will take breaks to rest your eyes and clear your mind.

6.      On or about March 2, 2018, at approximately 12:06 a.m., an individual

with the Kidschat username "Prew654" sent a private unsolicited message to

Investigator Evans, who, acting in an undercover capacity, was posing online as a 14-

year-old female using the username "Amiee14."  The following conversation occurred

on Kidschat.net between an individual utilizing username "Prew654" and Investigator

Evans, using the username "Amiee14."

Prew654: Hi age

Amiee14: 14 you

Prew654: older is that ok

Amiee14: yeah asl

Prew654: 50s m is that ok

Amiee14: Yep where u at

Prew654: USA, U?

Amiee14: Florida

Prew654: what city

3

Amiee14: soth walton

Prew654: what part of the state is that in

Amiee14: Walton County

Prew654: what do u looks like

Amiee14: Shot with brown hair

Prew654: eyes color height weight

Amiee14: 5 foot 100

Prew654: very pretty, any bros and sis ages

Amiee14: no

Prew654: Ever kiss a boy, you can tell me

Amiee14: No is that ok

Prew654: yea, ever had a bf[1]

Amiee14: no you wanna text somewhere else this is running slow

Prew654: what is running slow

Amiee14: this program, you wanna ****

Prew654: space that word that word is block[2]

---

[1] Based on your affiant's training and experience in online investigations involving minors, the term "bf" is short for "boyfriend."

[2] Based on your affiant's training and experience with social media applications and online platforms, your affiant knows that some chat platforms will not permit words that the platform considers lewd/crude or could potentially provide another social platform for the user to use. In this circumstance, the user Prew654 is informing Amiee14 how to work around the system/platform restrictions in order to

Amiee14: K I K

Prew654: no, do u have a email

Amiee14: yeh

Prew654: can i have it

Amiee14: elfingirl@gmail

Prew654: Can u email me now

Amiee14: yeah

Prew654: happyperson2900@gmail.com

(This portion of the conversation concluded at approximately 1:00 a.m. and then switched to email and continued.)

7.      On or about March 2, 2018, at approximately 1:03 a.m., Investigator Evans, still posing in an undercover capacity and using email address elfingirl2005@gmail.com, at the request of the username Prew654, sent an email to the person utilizing email address happyperson2900@gmail.com, and stated, "Hello." Within minutes, the individual using email address happyperson2900@gmail.com responded, "Hi how r u doing," and asked, "Any pics of u sweetie?" Investigator Evans responded, "Sure where do u live?" Happyperson2900@gmail.com replied, "n y can I see them?" Investigator Evans shortly thereafter emailed an image of a young female in a red and white checkered shirt. The following is a synopsized version of the conversation that ensued beginning at approximately 1:12 a.m., between Investigator

---

communicate.

Evans, using the email address elfingirl2005@gmail.com (hereinafter referred to as "EG"), and the person using the email address Happyperson2900@gmail.com (hereinafter referred to as "HP"):

HP: y r very pretty will u be my gf.[3]

EG: sure but we kind far

HP: I will come down there to see u.  any more pics of u sweetie.  Is that a yes u r my gf now.

EG: yes im ur gf.  What u wanna do when u come down

HP: do u like water parks. Movies.

EG: yeah is that all u wanna do be honest

HP: do u want me to touch u sweetie.

Having not responded right away, HP continued inquiring by stating, "What kind of stuff do u want to do" and, "What r u doing now?"

EG: I'm looking to learn stuff I havnt done anything, is that ok?

HP: I will teach u new stuff sweetie any sexy pics of u yes or no[4]

8.      At approximately 7:30 a.m. on or about March 2, 2018, the emails

---

[3] Based on your affiant's training and experience in online investigations involving minors, the term "gf" is short for "girlfriend." In this circumstance, the 50-year-old person utilizing the Gmail account in question is soliciting the 14-year-old minor to be his girlfriend.

[4] It should be noted that from here on out in approximately every instance that HP writes the word "sexy," or "sex" it is intentionally spelled with a "space" somewhere within the word. Ex: "se x" and "s e xy." However, for the purposes of this transcript, the spaces have been removed.

continued with the following:

HP: Gm sweetie.

EG: I have pics.  What new stuff will u teach me

HP: I will teach u about sex and how I can please u a lot to feel good, when can I see your sexy pics sweetie.  Can I kiss u sweetie

9. At approximately 4:09 p.m. on or about March 2, 2018, HP sent an email stating, "r u home from school yet?"

10. At approximately 4:37 p.m. on or about March 2, 2018, after receiving confirmation that the purported minor was home, HP sent an email stating, "Miss me sweetie," and, "Can I see some pics please?"

11. At approximately 4:52 p.m. on or about March 2, 2018, Investigator Evans, at the request of the person using email HP, and using email EG, emailed a second picture of the same young female, which depicted the female in a black and white shirt.  The following emails continued between HP and EG:

HP: u r very beautiful

HP: any sexy pics yes or no

EG: "um idk."[5]

HP: Please send me one kisses baby

EG: I think you just want pics from me

---

[5] Based on your affiant's training and experience in online investigations, the term 'idk' is an abbreviation for "I don't know."

HP:  I want to spend time with you

HP:   Can I see a full pic of you

HP:  Will u spend the night with me

HP:  Do u have a cell phone

HP:  Can I take u to the new water park that opened last year

EG:  Yeah I got a phone.  Yes ill spend the night with u but what u wanna do?

HP:  Do u want sex with me, yes or no

EG:  Yes I want to learn that be kool

HP:  Can I have your number?

HP:  What grade r u in and when is your birthday?

EG:  I'm in 8th grade and my birth day is novemver 11.  Just so u know I'm deaf if that bothers u and u don't want to talk to me any more I understand

The person using email HP then commented that it did not bother him, and requested that she teach him sign language.

12.    At approximately 5:45 p.m. on or about March 2, 2018, the conversation between Investigator Evans, using email EG, continued with an individual utilizing the email HP:

HP:  do u have tits yet

EG:  yeah that ok

HP:  do u remember how old I am.  Will u let me take your clothes off of u.  R u still here?

EG: sry was feeding my dogs.   Yes ur 50 right.   And yes ill let u take my clothes off.

HP: can I get u pregnent

EG: idk

HP: am I your first bf

EG: yes

HP: r u happy with me[6]

13.     At approximately 6:38 p.m. on or about March 2, 2018, HP sent an email which included a picture depicting seven adult men, dressed in formal attire, standing in front of a giant cross inside a building.   (The image is similar in nature/appearance to what a typical wedding picture would look like in which the groomsmen are all posed together side by side in the front of a church.)   HP asked, "Do u like what I looks like?"   After Investigator Evans responded affirmatively using email EG, HP asked, "did u ever saw a cock yet?" and then, "How big r your tits?"

14.     At approximately 8:08 p.m. on or about March 2, 2018, HP asked, "What kind of school do u go to.  Can we take a shower together?"

15.     At approximately 8:28 p.m. on or about March 2, 2018, HP asked how long she was going to be his girlfriend, to which Investigator Evans replied using email

---

[6] Based on your affiant's training and experience in online investigations involving adults and minors, your affiant is familiar with adults asking questions such as, "are you happy with me," in an effort to further solicit the minor into a deeper relationship with the adult predator.

9

EG, "How long u want me too.  U ever gonna answer my questions?"  The following conversation ensued, which is synopsized below:

HP: I want u to with me forever.  What questions do u want me to answer.

EG: What are u gonna teach me and how silly lol

HP: are u smiling

EG: yes

HP: I am going teach u how to touch me, play with my cock suck it, I am going play with your tits and pussy do u want that sweetie.  Am I making u very happy

EG: yes very much

HP: r u falling in love with me

EG: idk is that ok, I cant wait for u to teach me

Several minutes later, HP asked:

HP: do u have a nude pics of u yes or no.  It is ok.

EG: no I got in trouble once for it.

HP: that's ok sweetie will u be faithfully to me

EG: What do you mean

HP: will u cheat on me, go with other guys

EG: no

HP: do u have any hair on your pussy

At approximately 10:05 p.m. on or about March 2, 2018, HP asked, "Can I put my cock inside your pussy?"

EG: Yeah, is that what you want to do?

HP: I do baby.

Later on that same night, HP asked:

HP: would u be mad at me if I got u pregnant?

EG: idk.  I think I might be a little young for it.  Would u be mad?

HP: but if u get pregnant what will u do.  Did u had a period yet?

EG: idk what I would do.  What would u want me to do and yes on the other.

HP: if u get pregnant I will take care of u sweetie

EG: ok kool.  Ur so sweete

HP: can I have your address?

Having not received a reply, HP asked again:

HP: Will you give to me your address?

HP: R u there?

EG: idk bout that

HP: how r we going to meet without your address

EG: I can meet u by my house and u can pick me up if that's ok

HP: that's ok but I need some kind of address to get u, don't have to be yours.

What will you wear when u first meet me?

EG: what do u want me to wear

HP: skirt blouse sexy bra and panties.

16.    On or about March 3, 2018, at approximately 5:56 p.m., HP continued

11

the conversation via email, and asked if Investigator Evans, posing as a minor using email EG, had ever seen snow before and indicated that it snowed a lot where he resided.  HP then asked who the minor lived with, to which Investigator Evans replied using email EG, "My mom." Three images were then emailed by HP that depicted large piles of snow. HP then inquired, "where is dad at?"  Investigator Evans using email EG replied, "no dad, he left when I was yug.  That looks cold."  HP commented, "I will keep u warm when we cuddle together."  HP then asked, "Are u going to let me take good care of u sweetie?"  Investigator Evans using email EG replied, "that be great.  How are you going to do that?  HP responded, "After a while u will be living with me."

17.    The conversation continued into the night, when at approximately 8:07 p.m. on or about March 3, 2018, HP asked if he could have the minor's phone number, and then later on asked if the minor could cook and if she kept a clean place.  Having not responded, HP kept inquiring of the minor, "Sweetheart," and "are you still awake," and at approximately 11:55 p.m., "hello where did you go to?"

18.    On or about March 4, 2018, HP sent Investigator Evans, using email EG, a litany of emails that went unanswered by Investigator Evans, such as:

At approximately 9:07 a.m.: "Gm what r u doing"

At approximately 10:51 a.m.: "are u awake yet"

At approximately 12:04 p.m.: "Hi"

At approximately 1:05 p.m.: "What r u doing"

12

At approximately 2:12 p.m.: "Hello"

At approximately 3:22 p.m.: "are u awake"

At approximately 3:54 p.m.: "r u mad at me"

At approximately 5:16 p.m.: "hey"

At approximately 6:45 p.m.: "hello where are u today"

At approximately 9:25 p.m.: "hi"

19.    On or about March 5, 2018, at approximately 8:36 a.m., Investigator Evans responded using email EG, "Hi, sry was busy yesterday." HP commented, "Miss me? What r u doing now?"

20.    The conversation continued via email up until on or about March 13, 2018, at approximately 8:31 a.m., when HP wrote: "Text me when u come home from school." Investigator Evans, using email EG, replied, "I don't have your phone number to text you." HP supplied cellular telephone number 727-458-3589. At approximately 4:33 p.m., Investigator Evans, using email EG, emailed, "I sent u a text." The conversation then switched over to text communications using cellular telephone number 727-458-3589.

21.    Your affiant conducted a multiple queries in both public databases, as well as in law enforcement databases, for any information regarding the subscriber of the cellular telephone number 727-458-3589, and any information which could lead to identifying the person utilizing that cellular telephone number. Your affiant determined through online public databases that cellular telephone number 727-458-

13

3589 was geo-located out of/associated with Clearwater/St. Petersburg, Florida. In addition, your affiant located information through law enforcement databases that Glenn VARRIN was the potential subscriber of cellular telephone number 727-458-3589, and that VARRIN resided in Syracuse, New York, which matched the information that HP provided to Investigator Evans during both the Kidschat.net chat and email communication.

22.     Your affiant then conducted a driver's license query in the Driver and Vehicle Information Database for any information related to Glenn VARRIN. Your affiant located an expired driver's license record that matched the name Glenn VARRIN, and furthermore listed VARRIN'S state of birth as New York. The residential address that was associated with the expired license was 2143 20th Avenue North, St. Petersburg, Florida, which matched the approximate geo-location of cellular telephone number 727-458-3589.

23.     Between on or about March 14, 2018, through May 4, 2018, the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, exchanged text messages with Investigator Evans, posing in an undercover capacity. As indicated in the below text messages, your affiant has learned that the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, is a truck driver, as indicated by his text messages on or about March 14, 2018, and or about March 28, 2018:

March 14, 2018:

14

| | |
|---|---|
| 727-458-3589: | it's 84 where I am at now |
| EVANS: | Where u at |
| 727-458-3589: | Phoenix Arizona for today |
| EVANS: | Y u there |
| 727-458-3589: | job I drive for my job |
| EVANS: | Kool |
| 727-458-3589: | ever been in a semi |
| EVANS: | No |
| 727-458-3589: | would u go into one with me |
| EVANS: | Yeah, that be cool |
| 727-458-3589: | do u know have beds in there.  do u want to join me in bed in the truck |
| EVANS: | Yeah what would we do lol |
| 727-458-3589: | we can have sex in there |

March 28, 2018:

| | |
|---|---|
| EVANS: | Where ur today |
| 727-458-3589: | Virginia |
| EVANS: | Kool.  What do you drive |
| 727-458-3589: | international pro star 2019.  got it two weeks ago in Phoenix az |
| EVANS: | Whats that |
| 727-458-3589: | a big semi truck |

24.     The individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, then texted several images of a new truck, complete with images from inside the cab of the truck where the bed area is still wrapped in plastic. The truck has markings on it denoting the trucking company, "Swift."

25.     On or about March 28, 2018, the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, continued to make his intentions known to the purported minor by sending the following text messages to Investigator Evans who was acting in an undercover capacity:

727-458-3589:      how old r u again  12 13 14

EVANS:               13 u don't remember

727-458-3589:      I though u was. do u want to learn French kissing

EVANS:               Yeah what else u gonna teach me

727-458-3589:      do u want to see my c o ck

26.     On or about April 1, 2018, the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, sent several pictures via text messages, which included two images of a white male. In one image, the male is standing in front of a semi-truck with the "Swift" name markings on it, seemingly the same truck as described and depicted earlier in previous images sent. In the other image, the same white male with a shorter haircut is seated in a blue recliner with a dog on his lap. When compared by your affiant to the image on the expired Florida's driver's license, the male in both of these images matches that of Glenn VARRIN. It appears to your affiant that the individual who

16

was utilizing the username "Prew654" on Kidschat.net, the email account Happyperson2900@gmail.com, and sending text messages using cellular telephone number 727-458-3589, is the same individual, who is attempting to solicit and entice the female minor to depart from her residence in order to engage in a sexual relationship with him.

27.     On or about April 15, 2018, the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, informed via text message that he would be coming to visit the minor in 19 days:

EVANS:             U sure u ok with my age and all

727-458-3589:       your is is very fine with me. is me good for u.  we going see each other in 19 days

727-458-3589:       do you still want to meet me.  I love u.  I want to meet my love real bad.  R u going meet me may 4 friday

28.     On or about May 4, 2018, law enforcement established surveillance at the Emerald Coast Inn and Suites hotel located in Fort Walton Beach, Florida.  The individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, continued to communicate with an individual he believed was a 14-year-old female. Arrangements were made to meet the minor and pick her up (in his rental vehicle) for the purposes of spending the weekend together so the two of them could engage in a sexual relationship.  The individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, communicated via text message with Investigator Evans, who

17

continued to pose as a female minor, that he (VARRIN) would be spending the night in the area on or about May 3, 2018, and he (VARRIN) had acquired a hotel room at an establishment that had the word "Emerald" in the name.  Furthermore, the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, informed that he had dropped off his semi-truck, and had rented a black Mazda sport utility vehicle (hereinafter "SUV"), which he would utilize as his temporary mode of transportation when picking up the minor at the designated meeting location near to her house.

29.     At approximately 11:00 a.m., on or about May 4, 2018, your affiant observed a white male, who matched the appearance of whom your affiant knows to be VARRIN (based on the images VARRIN supplied Investigator Evans as well as the driver's license photo), exiting the Emerald Coast Inn and Suites hotel and walking to a parked black Mazda SUV bearing Florida license plate JBIY14.  VARRIN was wearing a dark colored shirt and khaki colored shorts.  VARRIN carried a duffle bag that he placed in the rear of the vehicle.

30.     Investigator Evans, while still posing as a 14-year-old female with a hearing disability, arranged to meet VARRIN around 2:00 p.m.  Investigator Evans, acting in the undercover capacity, had explained that the reason was that the minor was homeschooled; that her mother came home routinely for lunch; and the minor could not leave her residence until the mother returned to work from her lunch break.

31.     On or about May 4, 2018, at approximately 11:08 a.m., Investigator Evans, acting as a minor in an undercover capacity, sent a text message to the individual using cellular telephone number 727-458-3589, believed to be Glenn VARRIN, and provided

18

the address of a nearby Tom Thumb gas station located at 1101 Eglin Parkway, in Shalimar, Florida.   Investigator Evans, acting as a minor in an undercover capacity, informed VARRIN that he could pick-up the female minor at this location, because it was allegedly in walking distance from her residence.   At approximately 11:30 a.m., your affiant followed VARRIN as he departed the hotel in the black Mazda SUV, but not before he communicated via text message with Investigator Evans, acting as a minor, asking what her favorite colored roses were.   Investigator Evans responded that pink roses were the preference.

32.     Your affiant conducted surveillance of VARRIN as he exited the hotel parking lot and drove towards the direction of the purported minor.   VARRIN was observed driving as he turned onto a road that led to a Publix grocery store, but was not followed to the store itself.

33.     Your affiant continued driving towards the Tom Thumb gas station and set-up in close proximity to it, in order to observe VARRIN, in the black Mazda, as he approached.   Between approximately 12:30 p.m. and 1:00 p.m., your affiant observed VARRIN drive by the Tom Thumb on several occasions.   During one drive-by of the meeting location, VARRIN waited in the left-hand turn lane (opposite the gas station) for the traffic light to signal him to turn left across traffic.   However, before getting a green light to turn left, VARRIN pulled back into traffic and continued to pass by the location.   Based on your affiant's training and experience, it appeared VARRIN was conducting counter-surveillance in an effort to determine if he was being set-up by law enforcement so that he could avoid potential arrest.

19

34.     At approximately 1:10 p.m., Investigator Evans texted VARRIN, acting in an undercover capacity as a 14-year-old minor, and informed VARRIN that she would begin walking from her house to meet him at the Tom Thumb gas station.   At approximately 1:20 p.m., VARRIN was observed pulling into the Tom Thumb gas station, while driving the black Mazda SUV, and shortly thereafter, exited the vehicle.   At that time, law enforcement with the Okaloosa County Sheriff's Office confronted VARRIN and arrested him.

35.     Pursuant to his arrest, VARRIN'S rental vehicle was inventoried.   Law enforcement located pink roses in the floorboard of the backseat, as well as bags of clothing, condoms, and generic Viagra pills.   VARRIN also had with him three (3) devices, that is, a **Samsung cellphone**, an **IPAD**, and a **Samsung laptop computer** (more fully described in Attachments A-1, A-2 and A-3).

36.     VARRIN was transported to the Okaloosa County Sheriff's Office.   After providing him with *Miranda* warnings, VARRIN agreed to speak with your affiant and Investigator Evans.   VARRIN was informed that the parents of the minor, with whom he had been communicating with and was scheduled to meet that afternoon, had contacted law enforcement and advised them of the situation.   VARRIN was provided documents which reflected the Kidschat.net conversations VARRIN had with the purported 14-year-old minor.   In response, VARRIN stated he recognized the conversation, but informed law enforcement that he was not familiar with the username "Prew654."   Investigator Evans showed VARRIN a different document, which depicted a portion of a conversation when Kidschat username "Prew654" provided an email address of happyperson2900@gmail.com,

and instructed the minor to email him. In response, VARRIN was asked if happyperson2900@gmail.com was an email address that belonged to him. VARRIN indicated it was. VARRIN also informed law enforcement that, when he leaves his truck rig, he carries his personal electronics with him due to his fear that they may be stolen if left inside the truck. VARRIN stated that he utilizes his IPAD when he chats online, and provided his passcode to access the IPAD. VARRIN admitted that cellular telephone number 727-458-3589 belonged to him, and that law enforcement was currently in possession of his cellular device since they removed it during the time he was arrested. It should be noted that this is the same cellular telephone number referenced in paragraph 20 that the individual believed to be VARRIN provided to Investigator Evans. It is also the same cellular telephone number that Investigator Evans was sending/receiving text messages to/from when communicating with the individual believed to be VARRIN who was interested in having sexual relations with a child. When asked where he intended to spend the night that evening with the minor, VARRIN mentioned the nearby location of Panama City, Florida. When asked if he had already reserved a room for the evening, VARRIN stated that he had not, but that he was going to book a hotel room that evening online. (VARRIN motioned with his fingers as if he were typing on a laptop.)

37.    In sum, the investigation confirms that VARRIN utilized the Kidschat.net account, Gmail email account, and cellular telephone number 727-458-3589 to communicate with whom he believed was an underage female minor. Therefore, your affiant submits that there is probable cause to believe that evidence of attempted enticement of a minor will be

located/stored on the electronic devices described in Attachments A-1, A-2, and A-3. In addition, based upon the requests for nude images of the person whom he believed to be an underage female minor, as referenced in paragraphs 11 and 15 above, your affiant submits that there is probable cause to believe that evidence of possession of child pornography will be located/stored on the electronic devices described in Attachments A-1, A-2, and A-3.

### COMPUTERS AND CHILD EXPLOITATION

38.     Based upon my training and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Child pornography formerly was produced using cameras and film (either still photography or movies). To distribute these on any scale required significant resources. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

39.     The development of computers has changed this. Computers basically serve four functions in connection with child pornography:    production, communication, distribution, and storage.

40.     Child pornographers, and those willing to exploit children, can now transfer images from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be downloaded directly into a computer.

41.     Child pornographers, and those willing to exploit children, can also

22

reproduce both still and moving images directly from a common video camera. Using a cable, the camera is attached directly to the computer using a device called a video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred or printed out directly from the computer.

42.     The captured images are similar to photographs. The images can be printed, edited, lightened, darkened, cropped and manipulated in a wide variety of ways. As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography.

43.     Previously, as a general matter, child pornographers, and those willing to exploit children, had to rely on personal contact, United States mail, and telephonic communications in order to sell, trade or market child pornography. The development of the computer has also changed, that is, now electronic contact can be made to literally millions of computers around the world.

44.     With the advent of computers, contact with others on the internet can be very open and anonymous. The communication can also be quite private in the form of person-to-person instant messages. This communication structure is ideal for the child pornographer. The open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity. Once contact is established, it is possible to send messages and graphic images to a trusted person with similar interests. In addition to the use of large service providers, child pornographers can use standard internet

23

connections, such as those provided by businesses, universities, and government agencies to communicate with each other and distribute child pornography. These communication links allow contacts around the world in a relatively secure and anonymous format. These advantages are well known, serving as a foundation of commerce between child pornographers.

45. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. A single disk or storage device can store hundreds or thousands of images and pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously. Hard drives with a capacity of more than one hundred gigabytes are quite common. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, to process that image in a computer with a video capture board, and to save that image to a storage medium in another location. Once this is done, there is no readily apparent evidence at the scene of the crime. It is only with careful laboratory examination of electronic storage devices that it may be possible to recreate the evidence trail.

46. Another method of which child pornographers, and those willing to exploit children, are known to store and preserve their collection of images is on an external hard drive, commonly known as a pen drive, thumb drive, cruiser disk or USB drive. Such drives can be physically small in nature, but have the capacity to store hundreds or thousands of

images, movies or other digital media.  The small size of the drives makes them compact and mobile in addition to making them easy to conceal.

47.     The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.  This child pornography can be electronically mailed to anyone with access to a computer or smartphone.  With proliferation of commercial services and chat services, the computer/smartphone has become one, if not the preferred, method of distribution of child pornographic materials.

48.     A computerized depiction of child pornography is often stored and referred to as a GIF, short for Graphic Interchange Format, or a JPEG, short for Joint Photographic Experts Group.  A single image may be recorded as a single computer file.  However, a file may contain two or more images (sometimes more than 100), and these files are often referred to as ZIP or SIT files referring to their compressed archive format.  Another type of file is called an MPEG, short for Moving Picture Experts Group, and is a file containing a movie or video clip.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

49.     Searches and seizures of evidence from computers and cellular devices commonly require agents to download or copy information to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

A.     Computer storage devices (like cellphones) can store the equivalent of thousands of pages of information.  When the user wants to conceal criminal evidence,

he or she may store it in random order in the device with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

      B.      Searching computer systems for criminal evidence is a technical process likely requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system or cellular device is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected or encrypted files. Since computer evidence may be vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## CONCLUSION

      50.      Based upon the aforementioned factual information, your affiant respectfully submits there is probable cause to believe that contraband, evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 2422(b), the attempted enticement of a minor, and 2252A, possession of child pornography, will be found on the three (3) devices, that is, an **IPAD (bearing serial number:**

26

**DMPRX76FGXPX)** described in Attachment A-1; a **white Samsung cellular telephone in a black cellular telephone case** described in Attachment A-2; and a **Samsung laptop computer (bearing serial number: Z02Y93FZ402758K)** described in Attachment A-3.

51.    Your affiant, therefore, respectfully requests that the attached warrants be issued authorizing the instant searches of the three (3) devices, more particularly described in Attachments A-1, A-2, and A-3, and grant permission to seize and search for the items described in Attachment B.

Further, your affiant sayeth not.

Lindsey Bosso, Special Agent
Homeland Security Investigations


Subscribed and sworn before me this ___1ᵗʰ___ day of May 2018.

Elizabeth M. Timothy
Chief United States Magistrate Judge